IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| In the Matter of the Search of: A dark blue in color Samsung wireless telephone | Case No.: 3:25mj276-ZCB |
| In the matter of the search of: A dark blue in color Samsung wireless telephone with a cracked screen | Case No.: 3:25mj277-ZCB |
| In the matter of the search of: A Samsung wireless telephone with a black case | Case No.: 3:25mj278-ZCB |
| In the matter of the search of: An Apple iPhone wireless telephone with a brown case | Case No.: 3:25mj279-ZCB |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR
WARRANTS TO SEARCH AND SEIZE**

I, **Alexander Gardiner,** being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—electronic devices—which are currently in law

1

SBU - LEGAL

enforcement possession, and the extraction from that property of electronically stored information described in Attachments B-1, B-2, B-3, and B-4.

2. I am an investigative or law enforcement officer of the United States within the meaning of F.R.Cr.P. 41(a)(2)(C), as a Special Agent of the Diplomatic Security Service ("DSS"). I am empowered to conduct investigations of, and to make arrests for, federal offenses pursuant to Title 22, United States Code § 2709. I have been employed as a Special Agent by DSS since January 2024 and am currently assigned to investigate passport and visa crimes in the Miami Field Office. I am responsible for conducting investigations of federal crimes involving identity fraud, passport fraud, and visa fraud. At all times during the investigation described in this affidavit, I have acted in an official capacity as a Special Agent of the DSS. Prior to joining DSS, I was a commissioned officer serving in the Infantry and Civil Affairs branches of the United States Army.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, and witness, including information developed by other Special Agents of

2

the DSS, officers, agents, and detectives of local law enforcement agencies in the states of Illinois, Florida and Georgia, who have aided in this investigation. Unless otherwise noted, whenever I assert that a statement was made, the information was gathered from another law enforcement officer, investigator, or government official (with either direct or indirect knowledge of the statement) with whom I have spoken, or whose report I have read and reviewed. Likewise, any information pertaining to vehicles, registrations, personal data on Norbert BODEA, and record checks, has been obtained through various state driver's license motor vehicle records, online database searches, the National Crime Information Center computers, and various open-source databases. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.  The property to be searched is a dark blue in color Samsung wireless telephone, as more fully described in Attachment A-1, a dark blue in color Samsung wireless telephone with a cracked screen, as more fully described in Attachment A-2, a Samsung wireless telephone with a black case, as more fully described in Attachment A-3, and an Apple iPhone wireless telephone with a brown case, as more fully described in Attachment A-4 (collectively, "the Devices").

3

6. The applied-for warrants would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachments B-1, B-2, B-3, and B-4.

## PROBABLE CAUSE

7. On March 13, 2025, Escambia County Sheriff's Office investigator Harry Kilpatrick notified DSS Special Agents of an imposter case involving a fraudulent foreign passport. An individual presented a Polish passport EU3430524 in the name of Antoni BROZ at a local Bank of America branch. The Escambia County Sheriff's Office conducted facial recognition with a subpoenaed Bank of America surveillance video, and it identified BROZ as Norbert BODEA, a Hungarian national.

8. On April 10, 2025, DSS Special Agents contacted Bolingbrook Police Department outside of Chicago, Illinois, to investigate an arrest record associated to BODEA from 2021. Bolingbrook Police Department provided identity documents associated to BODEA, under the assumed identity of Stephen W. CHEN, which bore a strong resemblance to BODEA. During a 2021 interview by Bolingbrook Police, BODEA admitted to detectives his true identity is Norbert BODEA.

9. On May 6, 2025, an individual purporting to be Attila RAKOCZI, whom further investigation revealed to be BODEA, was arrested by Clarkston Police

Department in Clarkston, Georgia, pursuant to outstanding state warrants from Illinois and Florida. Agents from the DSS Miami Field Office assisted in the apprehension of BODEA and seized evidence from the Clarkston Police Department following the arrest. During a search incident to arrest (SIA), BODEA had in his possession a passport that appeared to be a Swiss passport with a suspected false identity, four identification cards in separate suspected false identities, two Bank of America wire receipts totaling $27,000 USD, one Regions cash deposit receipt for $100 USD, wire transfer history, multiple Georgia power bills in multiple suspected false identities, multiple credit and debit cards in suspected false identities, and the Devices.

10. Following BODEA's arrest by the Clarkston Police Department, BODEA was interviewed by DSS Special Agents where he invoked his right to legal counsel. During the interview, BODEA was read aloud and permitted to review a DSS advice of rights form, where he printed and signed his name as Attila RAKOCZI. After signing to acknowledge his right to legal counsel, BODEA declined to answer any questions from DSS agents. Upon completion of evidence property processing, DSS agents brought the seized property into the interview room for review. Prior to the evidence and property review, BODEA was again allowed to review the same advice of rights form and then was read aloud and allowed to review a false statement warning. BODEA signed and acknowledged both and stated

that he understood both forms. BODEA was presented with the first DS-1857 property / evidence receipt and allowed to review for accuracy. At the bottom of a DS-1857 is a print and signature block stating "I hereby acknowledge that the above list represents all property taken from my possession and that I have received a copy of this receipt." BODEA was allowed to review this acknowledgement and instructed to print and sign if he understood. At this time, BODEA said, "I made a mistake," and the Attila RAKOCZI name he provided on the first advice of rights was not his true name. He stated that his true name is Norbert BODEA. He was then presented with a new advice of rights form and instructed to correctly print and sign that he understood his rights.

11. Based on my training and experience, cellular devices can be used in various ways for bank fraud, including by cybercriminals who target mobile banking apps, to purchase and receive fraudulent documents, to receive payments for fraudulent services, and to trick users into revealing personal or financial information. When arrested by the Clarkston Police Department, BODEA had four cell phones and multiple fraudulent identification documents bearing his photograph with biographical data that did not match with his true identity. Based on my training and experience, I know that fraudulent identification documents are frequently generated, shared, possessed, and purchased electronically, especially utilizing cellular telephones.

SBU - LEGAL

12. As detailed above, there is probable cause to believe BODEA committed violations of Title 18, United States Code §1546, Fraud and misuse of visas, permits, and other documents, §1543 Forgery or false use of passport, and §1029 Fraud and related activity in connection with access devices.

13. As described above, during the Clarkston Police Department's search of BODEA incident to his arrest, the Devices were found on BODEA's person and were categorized in accordance with evidence and property procedures. The Devices are currently located in Pensacola, Florida, in the possession of your Affiant. I seek these warrants out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

14. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the DSS.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and

data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

16. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as wireless telephones. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

8

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachments B-1, B-2, B-3, and B-4, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

SBU - LEGAL

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the Devices consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the

SBU - LEGAL

entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrants.

20. *Manner of execution.* Because the warrants seek only permission to examine devices already in law enforcement's possession, the execution of the warrants does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for search warrants authorizing the examination of the Devices described in Attachments A-1, A-2, A-3, and A-4 to seek the items described in Attachments B-1, B-2, B-3, and B-4.

## REQUEST FOR SEALING

22. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the applications and search warrants. I believe that sealing the documents is necessary because the warrants are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet,

SBU - LEGAL

and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
ALEXANDER GARDINER
SPECIAL AGENT
DIPLOMATIC SECURITY SERVICE

Subscribed and sworn to telephonically before me on July 28, 2025:

/s/ *Zachary C. Bolitho*
ZACHARY C. BOLITHO
UNITED STATES MAGISTRATE JUDGE